United States District Court
middle District of Pennsylvania
Harrisburg Branch, venue

Kareem Gadson
by Glenn Stephens, Agent,
          Plaintiff(s)

v.

Epic Games Inc. DBA Fortnite
620 Crossroad Blvd.
Cary NC 27518
          Defendant(s)

**FILED**
**SCRANTON** Judge _____

NOV 04 2025

PER _____
DEPUTY CLERK

Case No. _____

I. Executive Summary
        Plaintiff Gadson by his entertainment agent Stephens seeks equitable and monetary relief for copyright preempted misappropriation and false endorsement.

II. "The Reemski"
        Prior to his incarceration in Lycoming County Prison, and subsequent transfer elsewhere, Kareem Gadson, aka "Reemski," who created a choreographic work* of the same name — i.e. the Reemski, which went viral on the internet. For example, a boxing world champion celebrated his victory, in part by doing "The Reemski." In addition to a large number of "likes," "clicks," or "hits" the Reemski has

        * The US Patent and Trade Office "Office" defines a choreographic work as a series of dance movements.

been done, in part, in the form of one or more of the constituent dance moves or whole, the series of dance movements and patterns as a coherent whole * by a number of very high profile celebrities. The choreographic work, the Reemski, and its creator have been subjects of international interest. Indeed Reemski - Gadson - has been interviewed by online music and dance cites in the United Kingdom and Europe.

While incarcerated together in Lycoming County Prison, Gadson and Glenn Stephens, discussed Gadson's interest in protecting the Reemski under the protections of "the Office." To that end, in March 2025, Gadson wrote the Patent and Trademark Office and requested forms and information regarding online application for the "applicable copyright and/or Trademark protections for "the Reemski." Stephens, who represents the disabled

* In whole, the Reemski, a tangible medium, is a choreographic work under 17 USC Sec. 102(a), not just a dance move alone.

pro - or low bono at EEOC, and occasionally in Federal court (he is a member in good standing in the Eastern District of michigan US District court), agreed to facilitate and assist Gadson's efforts to protect his "invention" - the Reemski choreographic move, from misuse, or worse, infringement of his pending copyright and trademark application. Stephens and Gadson, agreed that Stephens would help Gadson, not as a lawyer, but as an entertainment agent, for the consideration of Stephens' satisfaction,* of value to Stephens, of helping a black artist at risk for the "theft" of a work of choreographic art.*

While on bail, with his contractual privity to Gadson, and at Gadson's request, Stephens, as his agent (pro bono) contacted Gadson's brother and sister to facilitate their engagement of the Patent and Trademark offices' processes.

* Berkeley Law educated Stephens is Gadson's ~~entertainment~~ agent - not his Lawyer.
** The United States has a long history of mostly white corporations, producers or agents, stealing the works and/or profits of black talent.

p. 3

III. Epic Games Inc., DBA Fortnite's Appropriation and Misuse of "the Reemski"

Despite the fact it earns $15 billion a year, Epic Games and its Fortnite game have an established practice of stealing the dance moves of "Talent" or their longer choreographic moves, by creating "emotes" of those dances and Choreographic works, without the permission of those who created the dance or work. See, e.g., Pelligrino v. Epic Games, 451 F. Supp. 3d 373 (EDPA March 2020).

1. False Endorsement by Fortnite

Contrary to hackneyed racial stereotypes, the combination of an imprisoned choreographic works creator in the process of gaining "Office" protection, and his hip-hop or rap dance choreography cannot be misconstrued to imply that "the Reemski" is associated or endorses "the thug life." Indeed Gadson wants his choreographic work to create positive, healthy, fun feelings for those doing "the Reemski."

4

Yet, ignoring Gadson's express goals, found voluminously online, for the Reemski, Epic Games via Fortnite, appropriated without permission and then misused the Reemski to create the patently false impression that the Reemski had "thug-life" uses.

To the mortification of Gadson, Epic and Fortnite, created a emote that danced the Reemski in celebration after the shooting, and serious or mortal wounding, of a figure or character in the Fortnite game. This false endorsement of thug-life-violence by a Reemski-dancing figure, deceives the public into believing the Gadson and his dance endorse such violence. See <u>Beastie Boys v. Monster Energy</u>, 66 F.Supp. 3d 424, 448 (SDNY 2014) (applying Lanham Act)

Gadson moves for injunctive relief, first temporary, then permanent, of Epic/Fortnite misuse of the Reemski that conjoins his choreographic work, in part or whole, with acts of violence, criminality or murder.

Under Pelligrino, Epic/Fortnite's conjoining of "the Reemski" and violence creates the false impression that "the Reemski" and Reemski advocate or approve of violence, and worse the blithe disregard of civilized decency implied by dancing in a celebratory way over the dying or dead corpse of an adversary. Epic/Fortnite <u>must</u> immediately and permanently correct this misimpression with public- and in-game disclaimers that the Reemski is not associated with violence, shooting, murder, and mayhem.

But a la Pelligrino as plaintiff, Gadson also contests the implication that Epic's misappropriation and abuse of "the Reemski" implies he endorses Fortnite the game. While Gadson is open to a cooperative negotiation that might result in his endorsement of Fortnite - albeit with strict restrictions on how the Reemski emote "acts - at the present time, he does not endorse Fortnite or its Reemski emote.

6

## IV. Copyright Preemption

Due to the obvious logistical and financial constraints of imprisonment, Gadson and his sibling, with Stephens' assistance as his pro-bono agent, have initiated by not completed the copyright process. Thus, Gadson moves for copyright preemption to prevent Epic or others from stealing his choreographic movement. See NBA v. Motorola Inc.) 105 F.3d. 841, 849 (2nd Civ. 2007) (applying the Copyright Act to a work not yet actually protected).

Unlike the short "Running Man" dance which Epic/Fortnite misappropriated and misused, the Reemski does not fall outside the Act's protections as did the Running Man as a dance move. See, Brantley, supra.

Unlike "the Running Man," "the Reemski" is a choreographic work under 17 USC 102(a) — a compendium of practices, a composition and arrangement of a related series of dance movements and patterns in[] a coherent whole." Cf, Brantley v. Epic Games, 463 F. Supp. 3d.

616 (DMD 2020) (copyright preemption broader than copyright protection), see, id at 624.

Unlike the short, limited movements Running Man dance, the Reemski is or consists of a series of dance steps, dance movements and dance patterns. See Sec. 805.5 (B)(3). In that sense in terms of the "dance" to "choreographic work" spectrum, the Reemski is unlike the Running Man in Brantley and more akin to the choreographic work in Pelligrino, see, *7 n.5.

## V.  Unjust Enrichment Not Plead Herein

By pleading federal act violations and pendent State claims like unjust enrichment, plaintiffs suing Epic Games have unwittingly walked into the buzzsaw of preemption. Gadson does not commit this tactical error.

Although there are "cracks" in Pelligrino and that case is at odds with how Commonwealth courts analyze unjust enrichment, Gadson will bring his unjust enrichment case in Pennsylvania court. See MLB Players v. Draft King, 771 F Supp. 3d. 513, 538 (ED PA 2025) (discussing problems with Pelligrino and, in turn, Boring in unjust enrichment actions in Pennsylvania).

Gadsan v. Epic Games Fortnite    (complaint)

## VII. In Forma Pauperis Application(s)

To get the proverbial ball rolling, Gadson's agent Stephens brings this action on Gadson's behalf and at his behest. Stephens, proceeding as an entertainment agent — NOT LAWYER — has contractual privity with Gadson, and, in turn, Stephens submits he has standing to bring this action.

IFP application for Stephens is straightforward, and he submits the requisite forms. Stephens, via his sister, shall contact Gadson's siblings and via those siblings request that Gadson be sent, at the prison where he is being held, an IFP application form for his completion.

If both IFP applications are accepted and approved, payment shall be complete. BUT if Gadson and/or Stephens his agent are not approved then that exigency shall be addressed and the filing fee(s) paid.

In any event, the District Court shall, in time, be paid fees or fees waived via IFP. Gadson + Stephens request six weeks to address these payment contingencies en toto, in light of the unusual logistics.

## VI. Relief and Damages

a. Copyright Preemption Equitable Relief

Although Gadson and his agent Stephens have not yet gained the copyright protections of "the Office," the inquiry is whether "a work comes under the scope of the Act, and not whether it is actually protected." Brantley at 621. Gadson seeks injunctive relief barring Epic/Fortnite use of the Reemski or, absent such relief, the fair market value of Epic/Fortnite use.

b. Lanham Act False Endorsement money Damages

Gadson, and Gadson by Stephens, seeks money damages measured by the fair market value a willing buyer would pay a willing seller for such an implied or express endorsement of Fortnite by Gadson aka Reemski, see Pellegrino, 386 (discussing applicable law and applying that law to Pellegrino's "signature move").

Because this amount cannot be ascertained or even estimated by currently imprisoned Gadson and Stephens, this amount will be the subject of briefs, forensic accounting, and a hearing at a later date.

c. Request for mediation As soon as Possible

Gadson believes his Reemski makes money for Epic Fortnite. He wishes to mediate, with Stephens as his entertainment agent and representative at mediation, a profit sharing settlement. See b. above.

10

But at mediation, Gadson by Stephens, shall insist that his Reemski choreographic move shall immediately and permanently cease to be used as a celebratory victory dance associated with, conjoined with, or connected to acts of violence, shooting, stabbing, battery, theft, etc, to avoid and prevent the false impression that Gadson and "the Reemski" endorse criminality and violence.

Gadson shall insist on prior approval of any emote movements or dances in context, prior to the launching by Fortnite and Epic of Reemski-style moves; choreography, dance patterns.

Otherwise the details of an acceptable, mutually agreeable, settlement and use agreement shall be set by the parties at a mediation at the earliest possible date in a federal courthouse. Expedited mediation is sought for obvious reasons. *

---

* Stephens as agent, and representative at mediation, proceeds pro bono, (for free) for the purposes of justice and fairness for Gadson and his family.

Agent for Kareem Gadson
205 Berkshire Drive
Douglassville Pa 19518
Drghs3@gmail.com
610-927-7725

Gadson, et al.

v.

Epic Games Inc.

This case is unrelated legally to Stephens other MDPA cases and not the subject of Stephens' joinder motion and proposed order.